FILED
11/23/2022
*Terry Halpin*
CLERK
Yellowstone County District Court
STATE OF MONTANA
By: Ronda Duncan
DV-56-2022-0001121-PI
Fehr, Jessica
2.00

Teague Westrope
Kasodie West
Andrew Van Arsdale
AVA LAW GROUP, PLLC
2718 Montana Ave., Suite 220
Billings, MT 59101
(406) 626-3976
teague.westrope@avalaw.com
kasodie.west@avalaw.com
andrew.vanarsdale@avalaw.com

Jacquelyn Hughes
HUGHES LAW, PLLC
1690 Rimrock Rd., Suite F
Billings, MT 59102
(406) 855-4979
jhughes@hugheslawmt.com

*Attorneys for Plaintiffs*

**MONTANA THIRTEENTH JUDICIAL DISTRICT COURT**
**YELLOWSTONE COUNTY**

| | |
|---|---|
| GARY & CHERIE DEVERAUX, STEVE & JUDY WOODARD, CHRISTINE BLAYLOCK, KYLE LANGE, JOHN & JOYCE MCDONALD, and TIM & CHRISTI REISENAUER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MEADOWLARK OF BILLINGS LLC, and HAVENPARK MANAGEMENT LLC,<br><br>Defendants. | Case No.   DV-56-2022-0001121-PI<br><br>Judge   Jessica T. Fehr<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

/ / /

/ / /

1

EXHIBIT 5 - PAGE 1

COME NOW Plaintiffs Gary and Cherie Deveraux, Steve and Judy Woodard, Christine Blaylock, Kyle Lange, John and Joyce McDonald, and Tim & Christi Reisenauer, individually and on behalf of others similarly situated, and through counsel hereby allege as follows:

1. Plaintiffs are all residents of Meadowlark, a mobile home park located in Yellowstone County, Montana.

2. Gary and Cherie Deveraux own and live in the mobile home located at 105 Jack Street in Meadowlark.

3. Steve and Judy Woodard own and live in the mobile home located at 616 Richard Street in Meadowlark. They also own and lease out three other mobile homes in Meadowlark.

4. Christine Blaylock owns and lives in the mobile home located at 220 Jim Street in Meadowlark.

5. Kyle Lange owns and lives in the mobile home located at 604 Richard Street in Meadowlark.

6. John and Joyce McDonald own and live in the mobile home located at 502 Steve Street in Meadowlark.

7. Tim and Christi Reisenauer own and live in the mobile home located at 228 Jim Street in Meadowlark.

8. Defendants are both foreign limited liability companies with their principal address listed with the Montana Secretary of State as 51 W. Center Street, Suite 600, Orem, Utah 84057.

9. Upon information and belief, Meadowlark of Billings LLC purchased the real property upon which Meadowlark exists on June 1, 2020.

10. Upon information and belief, Havenpark Management LLC is affiliated with Havenpark Communities, which manages Meadowlark.

EXHIBIT 5 - PAGE 2

11. The Court has subject matter jurisdiction.

12. The Court has personal jurisdiction.

13. Venue is proper in Yellowstone County, Montana.

14. Residents at Meadowlark started noticing a change in their water around November 2020. By mid-to-late 2021, the color of the water had darkened to nearly black.

15. Residents reported the unfit water to Defendants.

16. In the same time frame as residents were reporting the water problems to Defendants, Defendants adopted a rule at Meadowlark that trailer tongues of all mobile homes had to be covered or removed.

17. Upon information and belief, Defendants cut off the trailer tongues of approximately 139 mobile homes at Meadowlark.

18. According to an article in the Billings Gazette published on February 2, 2022, the Montana Department of Environmental Quality (DEQ) indicated that it had been working with Defendants since December 2021 to address the unfit water. The DEQ advised the Billings Gazette that it had discovered iron and manganese in the water, two contaminates that are not regulated by the DEQ. In the same Billings Gazette article, it was reported that Defendants had ordered parts to repair Meadowlark's failing water system.

19. Defendants issued a public statement in April 2022, as reported by MTN News, stating that repairs and maintenance to the water system were underway which would fix the unfit water.

20. As of today, the water is still discolored, contains sediment, and is unpalatable to drink.

EXHIBIT 5 - PAGE 3

21. Plaintiffs have suffered skin irritation from bathing in the unfit water. Plaintiffs believe the skin irritation is from Defendants putting too many chemicals into the water to treat it.

22. The unfit water has also caused damage to Plaintiffs' clothing, toilets, appliances, water heaters, and plumbing.

23. Plaintiffs have attempted to mitigate their damages by purchasing supplemental water to drink, cook, clean, brush their teeth, and bathe. They have also purchased water filters and have at times taken their laundry to laundromats.

24. Defendants have failed to correct the conditions causing the unfit water, yet they have raised rent multiple times since June 1, 2020, and plan to do so again come January 1, 2023.

25. Plaintiffs filed the first *Complaint and Demand for Jury Trial* on November 1, 2022.

26. At the time the *Complaint* was filed, KTVQ ran a segment and published an article on the ongoing water problems, along with the fact that suit had been filed against Defendants.

27. By November 12, 2022, Havenpark modified its online payment portal.

28. The modification to the payment portal included a forced arbitration agreement and a waiver of right to pursue remedies in District Court:

> PLEASE NOTE THAT THESE TERMS CONTAIN AN ARBITRATION AGREEMENT AND CLASS ACTION WAIVER THAT REQUIRE YOU TO ARBITRATE ALL DISPUTES YOU HAVE WITH US ON AN INDIVIDUAL BASIS. ACCORDINGLY, YOU AGREE TO GIVE UP YOUR RIGHT TO GO TO COURT (INCLUDING IN A CLASS ACTION PROCEEDING) TO ASSERT OR DEFEND YOUR RIGHTS UNDER THESE TERMS…

29. The Montana Residential Mobile Home Lot Rental Act states in part, "A right or obligation declared by this chapter is enforceable **by action** unless the provision declaring it specifies a different and limited effect." Montana Code Annotated § 70-33-401(2) (emphasis added.)

30. Montana Code Annotated § 27-7-102(2) defines an action as follows, "An action is an ordinary proceeding **in a court of justice** by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Every other remedy is a special proceeding." (Emphasis added.)

31. Residents of Meadowlark could not pay via the online portal unless they waived the right to a district court proceeding and/or a class action lawsuit.

32. Meadowlark residents are being forced to waive rights to pursue an action in District Court or risk being evicted from their homes.

33. On November 18, 2022, Defendants purportedly sent out a letter to Meadowlark residents which stated:

> In the ongoing effort to improve the water at Meadowlark, you will notice work being done at the pump house over the next week. The water tanks will be flushed out, sanitized, and cleaned to prepare for the re-set of the filtration system. While the tanks are empty, we will ask that everyone conserve water. The community will be operating on few tanks than usual.
>
> Please do not leave faucets dripping or running overnight as this quickly drains the water tanks. It is imperative that your home is winterized and that the heat tape on your pipes is functioning properly as well as having your home insulated, including the skirting and under the home to prevent freezing pipes.
>
> We ask from the hours of 10 pm to 6 am you be mindful of using an excessive amount of water. This is temporary as we work on the water system.
>
> As usual, we will have bottled water available at the office. If you would like water to be delivered to your door, please call the office at 406-252-6131.

34. On November 20, 2022, the water to a few hundred residents was shut off entirely without notice.

35. Defendants were not responsive to the concerns of Meadowlark residents about not having water.

36. At 10:48 a.m. on November 21, 2022, Plaintiffs' counsel, Teague Westrope, sent an email to Defendants demanding a reason for why the water was shut off. Attorney Westrope provided a deadline of the end of the day on November 21, 2022. No response was received from Defendants.

37. When Meadowlark residents went to Defendants' office on November 21, 2022, to seek answers for why there was no water, Defendants called law enforcement and claimed the residents were trespassing.

38. Defendants' employees advised Meadowlark residents that a water line had broken, and that they were unable to find someone to fix it.

39. Defendants' employees advised Meadowlark residents that they would get porta-potties for the residents, which would require residents to leave their homes to go to the bathroom.

40. A Meadowlark resident contacted Riverstone Health in hopes that involving the County Health Department would assist in resolving the issues. Said resident received a return phone call conveying that Defendants had been contacted and had stated that the problem had been fixed.

41. After being shut off for approximately 23 hours, Defendants turned the water back on at Meadowlark. The water was dark brown and appeared to be of no use other than to flush the toilet.

42. Defendants released the following statement to the media:

> Meadowlark is on a well system that is more than 60 years old, and the well system is showing its age. Havenpark completely understands the concern of residents and has been doing all we can to repair the filtration and sediment issues.
>
> It's important to note that while visually not up to expectations, the water has been tested and proven to be safe. We have been completing onsite testing of the water daily ever since we purchased the park during the summer of 2020. Water samples are also

> sent monthly to Energy Labs to do bacterial testing, and the tests have always come back as safe and are presented to DEQ per requirement.
>
> We continue to follow the guidance of Curb Box Specialist, a 3rd party certified water operator in the state of Montana who is also verifying the safety of the water, and advising us on how to fix the system. During the last several months, we've upgraded and replaced several parts and filters, cleaned water lines and tanks, and even brought in the Culligan company to help with filtering. These efforts have significantly improved the water in the community but have not fully resolved the sediment issues during higher usage times (such as weekends). We continue to do all we can and have even called in another out-of-state certified water operator in hopes that they may have new ideas or solutions that we can try.
>
> As new potential solutions are suggested by water professionals, we will continue to invest in, and implement those suggestions as quickly and appropriately as possible.

43. By the morning of November 22, 2022, Defendants again shut the water off to numerous Meadowlark residents without warning.

### COUNT I: VIOLATION OF THE MONTANA RESIDENTIAL MOBILE HOME LOT RENTAL ACT

44. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

45. Montana Code Annotated § 70-33-303(1)(b) requires a landlord to "make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition . . ."

46. Montana Code Annotated § 70-33-303(1)(d) further requires a landlord to "maintain in good and safe working order and condition all . . . plumbing . . ."

47. Defendants have failed to correct the conditions causing the unfit water, yet they have raised rent multiple times since June 1, 2020, and plan to do so again come January 1, 2023.

48. Defendants' are in breach of their statutory obligations to Plaintiffs.

49. Defendants' breaches have caused damages to Plaintiffs.

### COUNT II: ACTUAL FRAUD

50. John and Joyce McDonald and Tim and Christi Reisenauer incorporate all preceding paragraphs as if set forth fully herein.

51. John and Joyce moved their mobile home onto 502 Steve Street in Meadowlark in October 2021. At the time, Defendants represented to John and Joyce that the dark water was from a broken water line that was going to be fixed.

52. Tim and Christi purchased their mobile home at 228 Jim Street in Meadowlark in April 2022. Before purchasing the mobile home, Defendants represented to Tim and Christi that the unfit water was being fixed and that they could feel confident moving forward with their purchase.

53. Defendants' representations to John and Joyce and to Tim and Christi were false.

54. The false representations were material in that they assuaged the concerns John and Joyce and Tim and Christi had about the unfit water and induced them to move into Meadowlark.

55. Defendants knew that the representations were false or otherwise made the representations with reckless disregard for the truth.

56. Defendants intended for John and Joyce and Tim and Christi to rely upon the false representations and move into Meadowlark.

57. John and Joyce and Tim and Christi did not know that Defendants' representations were false.

58. John and Joyce and Tim and Christi relied upon the false representations.

59. John and Joyce and Tim and Christi had a right to rely on the false representations.

60. In relying upon the false representations, John and Joyce and Tim and Christi moved into Meadowlark and have suffered actual damages.

### COUNT III: NEGLIGENT MISREPRESENTATION

61. John and Joyce McDonald and Tim and Christi Reisenauer incorporate all preceding paragraphs as if set forth fully herein.

62. John and Joyce moved their mobile home onto 502 Steve Street in Meadowlark in October 2021. At the time, Defendants represented to John and Joyce that the dark water was from a broken water line that was to be fixed. The representations assuaged the concerns that John and Joyce had about the unfit water and induced them to move into Meadowlark.

63. Tim and Christi purchased their mobile home at 228 Jim Street in Meadowlark in April 2022. Before purchasing the mobile home, Defendants represented to Tim and Christi that the unfit water was being fixed and that they could feel confident moving forward with their purchase. The representations assuaged the concerns that Tim and Christi had about the unfit water and induced them to move into Meadowlark.

64. Defendants' representations to John and Joyce and to Tim and Christi were untrue.

65. Defendants made the representations without any reasonable ground for believing them to be true.

66. Defendants made the representations with the intent to induce John and Joyce and Tim Christi to rely on them and move into Meadowlark.

67. John and Joyce and Tim and Christi did not know that the representations were untrue.

68. John and Joyce and Tim and Christi acted in reliance upon the untrue representations.

69. John and Joyce and Tim and Christi had a right to rely on the untrue representations.

70. In relying upon the untrue representations, John and Joyce and Tim and Christi moved into Meadowlark and have suffered actual damages.

### COUNT IV: TRESPASS TO CHATTELS AND CONVERSION

71. Kyle Lange and John and Joyce McDonald incorporate paragraphs 5-6 and 8-10 as if set forth fully herein.

72. Montana Code Annotated § 70-33-311(1) states in part that a landlord may adopt a rule concerning a tenant's use and occupancy of the premises, but that such a rule is only enforceable if its purpose is to promote the convenience, safety, or welfare of the occupants in the premises, preserve the landlord's property from abusive use, or make a fair distribution of services and facilities held out for the tenants generally.

73. What is more, Montana Code Annotated § 70-33-311(3) states that if a rule is adopted after a tenant enters into a rental agreement, and if the rule involves a substantial modification of the rental agreement, the rule is not valid until after 30 days.

74. Defendants' rule that mobile home trailer tongues had to be covered or removed was unenforceable.

75. Defendants' intentional interference with, and dispossession of, the trailer tongues attached to the mobile homes owned by Kyle and John and Joyce constitutes trespass to chattels and conversion.

76. By intentionally interfering with, and dispossessing Kyle and John and Joyce of, their trailer tongues, Defendants acted with actual malice.

77. Defendants were aware that tenants of mobile homes often lack the financial means to move.

78. In an online article entitled *Wall Street investors pricing Americans out of last bastion of affordable housing*, published on January 18, 2021, by investigative journalists Nicolle Schorchit, Darryl Kinsey Jr., and Patrick Britt with the Howard Center for Investigative

Journalism, the article revealed that Havenpark's website in 2017 discussed its business strategy as "[creating] value through aggressive optimization programs and lean property management systems," and observing that "[t]enant turnover is also minimal since it is difficult and very expensive ($6,000-8,000+) for tenants to move their homes. As a result, operating cash flow is among the highest of any real estate class."

79. By dispossessing tenants such as Kyle and John and Joyce of their trailer tongues, Defendants intentionally disregarded their property rights and stole their freedom to move from Meadowlark if they wanted to.

## COUNT V: INJUNCTIVE RELIEF

80. Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

81. Plaintiffs have undertaken numerous efforts to resolve the issues presented in this matter to no avail.

82. Plaintiffs have reason to believe that Defendants will act in a manner that interferes with Plaintiffs' property rights in that:

   a. Defendants will pursue evictions against residents who do not waive their right to pursue an action against Defendants in District Court;

   b. Defendants will continue to shut off water to its residents at unreasonable times, without notice, and without restoring water use within a reasonable time, thereby depriving residents of the ability to use their homes;

   c. Residents will be forced to leave their homes in the winter to use porta potties;

   d. Residents will not be able to access water for drinking, bathing, laundering clothing, or any other purpose for which water is used in a residential setting.

83. Defendants' conduct, if continued, will cause irreparable harm to Plaintiffs in that Plaintiffs will be forced to leave their homes for basic human necessities such as going to the bathroom and bathing.

84. Defendants' conduct, if continued, will cause irreparable harm to Plaintiffs in that Plaintiffs will be forced to choose between paying for safe drinking and cooking water or paying rent, resulting in evictions of people who cannot afford both.

85. Defendants' conduct, if continued, will cause irreparable harm to Plaintiffs in that Plaintiffs will literally be rendered homeless if they attempt to enforce their rights under Montana law.

86. If the water lines have broken, as Defendants claim, Defendants failure to repair the water lines in a timely manner could result in bacteria, garbage, and mineral deposits leaking into the already contaminated water, rendering the water unsafe, cause significant property damage, and cause the fear, if not the reality, of communicable diseases.

87. Monetary damages will be an inadequate remedy for the harm caused to Plaintiffs by Defendants. In accordance with Rule 65 of the Montana Rules of Civil Procedure, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief. Monetary damages will be impossible to ascertain, recover, and overcome.

88. Plaintiffs are entitled to injunctive relief ordering Defendants to comply with Mont. Code Ann. 70-33-303 requiring, among other things, reasonable amounts of running water.

89. Plaintiffs are entitled to injunctive relief prohibiting evictions during the pendency of this action as Defendants conduct is clearly retaliatory and intended to threaten Plaintiffs into not pursing their legal remedies.

90. Plaintiffs are entitled to injunctive relief ordering Defendants to consistently provide clean water to Plaintiffs even if that means Defendants have to transport water into Meadowlark while it is investigating and remediating the problems with its well.

91. Plaintiffs are entitled to injunctive relief ordering Defendants to provide sufficient amounts of drinking and cooking water during the pendency of this action.

92. Plaintiffs are entitled to injunctive relief ordering Defendants to repair all broken water lines within six hours of notice of the break or to show cause as to why repairs could not be made within a reasonable time.

93. Plaintiffs are entitled to injunctive relief ordering Defendants to provide at least 48 hours' notice when it intends to conduct non-emergency repairs.

94. Plaintiffs are entitled to injunctive relief ordering Defendants to limit water shut offs for non-emergency repairs to four hours or less, during which times Defendants shall deliver sufficient water to its residents for drinking and cooking.

## PUTATIVE CLASS

95. Plaintiffs seek certification under Rule 23(b)(3) of the Montana Rules of Civil Procedure of the following classes:

   a. Current and former residents of Meadowlark for whom Defendants have failed to keep the premises in a fit and habitable condition, and for whom Defendants have failed to maintain all plumbing in good and safe working order and condition;

    b. Current and former residents of Meadowlark to whom Defendants committed actual fraud or negligent misrepresentation by making false or untrue representations about the water condition and plans to repair the water system; and

    c. Current and former residents of Meadowlark whose trailer tongues Defendants unlawfully interfered with and dispossessed the residents of.

96. Meadowlark has nearly 220 mobile home lots, thus the potential classes in this case are so numerous that joinder of all members is impracticable.

97. Questions of law and fact relative to Defendants' acts, omissions, and representations are common to the potential classes.

98. Plaintiffs' claims against Defendants are typical of the claims which other members of the potential class have against Defendants.

99. Plaintiffs will fairly and adequately protect the interests of the potential classes.

100. Common issues surrounding Defendants' acts, omissions, and representations predominate over individual circumstances, and these common issues are capable of class-wide resolution and are superior to the class members' interests in individually controlling the prosecution of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following judgment and relief:

1. For certification of classes of individuals similarly situated with Plaintiffs.

2. For a determination that Defendants are both "landlords," as "landlord" is defined in the Montana Residential Mobile Home Lot Rental Act, and that Defendants have acted in

concert to satisfy their responsibilities under the Act, such that Defendants are jointly liable for the harms they have caused to Plaintiffs and the potential class members.

3. For injunctive relief:

   a. Prohibiting Defendants from engaging in retaliatory conduct, such as increasing rent, decreasing services, or bringing or threatening to bring an action for possession.

   b. Suspending Plaintiffs' rent obligations, and the rent obligations of potential class members, until Defendants comply with their responsibilities under the Montana Residential Mobile Home Lot Rental Act and prohibiting evictions during this time.

   c. Ordering Defendants to comply with Mont. Code Ann. 70-33-406 requiring, among other things, reasonable amounts of running water.

   d. Ordering Defendants to consistently provide clean water to Plaintiffs even if that means Defendant has to transport water into Meadowlark's water tanks while it is investigating and remediating the problems with its well.

   e. Ordering Defendants to provide sufficient amounts of drinking and cooking water during the pendency of this action.

   f. Ordering Defendants to repair all broken water lines within six hours of notice of the break or to show cause as to why repairs could not be made within a reasonable time.

   g. Ordering Defendants to provide at least forty-eight hours' notice when it intends to conduct non-emergency repairs.

  h. Ordering Defendants to limit water shut offs for non-emergency repairs to four hours or less, during which times Defendants shall deliver sufficient water to its residents for drinking and cooking.

4. For actual damages caused to Plaintiffs and potential class members for Defendants' violations of the Montana Residential Mobile Home Lot Rental Act, including, without limitation, for the costs of supplemental water, laundry services, damaged clothing, and damaged appliances, toilets, hot water heaters, and plumbing.

5. For reasonable charges for labor caused to Plaintiffs and potential class members for Defendants' violations of the Montana Residential Mobile Home Lot Rental Act, including, without limitation, labor to secure supplemental water, perform laundry services at laundromats, shop for replacement clothing, and repair damaged appliances, toilets, hot water heaters, and plumbing.

6. For actual damages to John and Joyce, Tim and Christi, and potential class members for Defendants committing actual fraud or negligent misrepresentation.

7. For punitive damages for Defendants committing actual fraud and being guilty of actual malice toward Plaintiffs.

8. For three months' rent to Kyle, John and Joyce, and class members for Defendants implementing an unenforceable rule.

9. For actual damages to Kyle, John and Joyce, and class members for Defendants committing the torts of trespass to chattels and conversion.

10. For reasonable attorneys' fees and costs as permitted under the Montana Residential Mobile Home Lot Rental Act.

11. For all further legal or equitable relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this matter.

DATED November 22, 2022.

                                                    HUGHES LAW, P.L.L.C.

                                                   */s/ Jacquelyn M. Hughes*
                                                   Attorney for Plaintiffs

EXHIBIT 5 - PAGE 17

## CERTIFICATE OF SERVICE

I, Jacquelyn Marjorie Hughes, hereby certify that I have served true and accurate copies of the foregoing Complaint - Amended Complaint to the following on 11-23-2022:

Teague J. Westrope (Attorney)
2718 Montana Ave.
Suite 220
Billings MT 59101
Representing: John McDonald, Cherie Deveraux, Steve Woodard, Joyce McDonald, Gary Deveraux, Christine Blaylock, Judy Woodard, Christi Reisenauer, Tim Reisenauer, Kyle Lange
Service Method: eService

Electronically Signed By: Jacquelyn Marjorie Hughes
Dated: 11-23-2022

EXHIBIT 5 - PAGE 18