Teague Westrope
Kasodie West
Andrew Van Arsdale
AVA LAW GROUP, PLLC
2718 Montana Ave., Suite 220
Billings, MT 59101
(406) 626-3976
teague.westrope@avalaw.com
kasodie.west@avalaw.com
andrew.vanarsdale@avalaw.com

Jacquelyn Hughes
HUGHES LAW, PLLC
1690 Rimrock Rd., Suite F
Billings, MT 59102
(406) 855-4979
jhughes@hugheslawmt.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| GARY & CHERIE DEVERAUX, STEVE & JUDY WOODARD, CHRISTINE BLAYLOCK, KYLE LANGE, JOHN & JOYCE MCDONALD, TIM & CHRISTI REISENAUER, DESTINY MANYEN, DALLAS & VEONCA BUDELL, LAURE ROSWELL, and CARLA MCCRACKEN, individually and on behalf of others similarly situated, | Case No. CV 22-136-BLG-SPW  **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| vs. | |

1

| MEADOWLARK OF BILLINGS LLC, and HAVENPARK MANAGEMENT LLC, | |
|---|---|
| Defendants. | |

COME NOW Plaintiffs Gary and Cherie Deveraux, Steve and Judy Woodard, Christine Blaylock, Kyle Lange, John and Joyce McDonald, Tim & Christi Reisenauer, Destiny Manyen, and Dallas and Veonca Budell, individually and on behalf of others similarly situated, and through counsel hereby allege as follows:

## PARTIES

1.      Plaintiffs are all residents of Meadowlark, a mobile home park located in Yellowstone County, Montana.

2.      Gary and Cherie Deveraux own and live in the mobile home located at 105 Jack Street in Meadowlark.

3.      Steve and Judy Woodard own and live in the mobile home located at 616 Richard Street in Meadowlark. They also own and lease out three other mobile homes in Meadowlark.

4.      Christine Blaylock owns and lives in the mobile home located at 220 Jim Street in Meadowlark.

5.      Kyle Lange owns and lives in the mobile home located at 604 Richard Street in Meadowlark.

6.    John and Joyce McDonald own and live in the mobile home located at 502 Steve Street in Meadowlark.

7.    Tim and Christi Reisenauer own and live in the mobile home located at 228 Jim Street in Meadowlark.

8.    Destiny Manyen owns a live in the mobile home located at 348 Dani Street in Meadowlark.

9.    Dallas and Veonca Budell own and live in the mobile home located at 143 Jackson Street in Meadowlark.

10.    Laure Roswell and her family own and live in the mobile home located at 106 Jack Street in Meadowlark.

11.    Carla McCracken lives in the mobile home located at 400 Ed Street in Meadowlark.

12.    Defendants are both foreign limited liability companies with their principal address listed with the Montana Secretary of State as 51 W. Center Street, Suite 600, Orem, Utah 84057.

13.    Upon information and belief, Meadowlark of Billings LLC purchased the real property upon which Meadowlark exists on June 1, 2020.

14.    Upon information and belief, Havenpark Management LLC is affiliated with Havenpark Communities, which manages Meadowlark.

/ / /

**JURISDICTION**

15.    This Court has diversity jurisdiction over the parties.

16.    Venue is proper in this Court.

**GENERAL ALLEGATIONS**

17.    Shortly after purchasing Meadowlark, Defendants adopted a rule at Meadowlark that the trailer tongues of all mobile homes had to be covered or removed.

18.    Without permission from the individual homeowners at Meadowlark, Defendants cut off the trailer tongues of approximately 139 mobile homes.

19.    Around November 2020, Meadowlark's residents started noticing a change in the condition of their water.

20.    By mid-to-late 2021, the color of the water within Meadowlark had darkened to nearly black.

21.    Meadowlark's residents reported the water condition to Defendants.

22.    According to an article in the Billings Gazette published on February 2, 2022, the Montana Department of Environmental Quality (DEQ) indicated that it had been working with Defendants since December 2021 to address the water condition. The DEQ advised the Billings Gazette that it had discovered iron and manganese in the water, two contaminates that are not regulated by the DEQ. In the

same Billings Gazette article, it was reported that Defendants had supposedly ordered parts to repair Meadowlark's failing water system.

23.    Defendants issued a public statement in April 2022, as reported by MTN News, stating that repairs and maintenance to the water system were supposedly underway which would fix the water condition.

24.    As of the date on which the original complaint was filed in this case, the water was still discolored, contained sediment and perhaps other contaminants, and was unpalatable to drink.

25.    Plaintiffs have suffered a variety of health issues from Meadowlark's water, the most common having been skin irritation. Others have suffered more serious or severe health issues. For example, earlier this year Destiny Manyen fell ill during her second trimester of pregnancy and subsequently tested positive for E. coli. She believes her infection was caused by Meadowlark's water. For more than a month, she struggled to eat and drink, and during that time she lost quite a bit of weight. Similarly, Dallas Budell suffered a serious bacterial infection in his intestinal tract earlier this year. He likewise believes his infection was caused by Meadowlark's water. And he, too, struggled to eat and drink and lost approximately 45 lbs. within a month.

26.    Plaintiffs have suffered serious or severe emotional distress from the lack of consistent, clean running water. For example, Laure Roswell is suffering

from Stage 3 Invasive Ductile Carcinoma, a form of breast cancer. She lives with terrible bone and neurological pain, for which her medical providers recommend warm baths with Epsom salts. However, due to the condition of Meadowlark's water, she must use wipes for bathing and cleaning of the area around her implanted port for chemotherapy. If she uses Meadowlark's water, her face and body become red and blotchy. Additionally, due to the chemotherapy drugs in her system, Laure's medical providers have advised her to the flush the toilet at least twice after going to the bathroom. Yet because of the inconsistent delivery of running water to her mobile home, Laure must keep at least 10 one-gallon jugs of water on hand to be able to flush her toilet. Similarly, Carla McCracken is undergoing peritoneal dialysis, and she, too, cannot use Meadowlark's water to bathe in due to the risk of infection and sediment contamination at the port site in her abdomen where the catheter is inserted for the dialysis.

27.    Meadowlark's water has further caused damage to Plaintiffs' clothing, toilets, bathtubs/showers, appliances, water heaters, plumbing, and other household items.

28.    Plaintiffs have gone without running water for extended periods of time. At least one resident has represented to Plaintiffs' counsel that she went without running water for at least 15 days.

29.     Plaintiffs have attempted to mitigate their damages by purchasing supplemental water to drink, cook, clean, brush their teeth, and bathe. Some have also purchased water filters and have at times taken their laundry to laundromats. John and Joyce, who are both elderly, use a camp shower to shower. And Destiny and her family have resorted to showering at her mother's home, which is not located within Meadowlark.

30.     Defendants have failed to provide consistent, clean running water to Plaintiffs, yet they have raised rent multiple times since June 1, 2020, and plan to do so again come January 1, 2023.

31.     Plaintiffs filed their first *Complaint and Demand for Jury Trial* on November 1, 2022.

32.     At the time the *Complaint* was filed, KTVQ ran a segment and published an article on the ongoing water problems. In the article, KTVQ reported that Havenpark had sent an email response to news of the *Complaint*, stating in part, "We appreciate you giving us an opportunity to comment, but at this time we cannot respond as this matter is in litigation."

33.     By November 12, 2022, Havenpark modified its online payment portal to include a forced arbitration agreement and a waiver of right to pursue remedies in District Court:

> PLEASE NOTE THAT THESE TERMS CONTAIN AN
> ARBITRATION AGREEMENT AND CLASS ACTION WAIVER

THAT REQUIRE YOU TO ARBITRATE ALL DISPUTES YOU HAVE WITH US ON AN INDIVIDUAL BASIS. ACCORDINGLY, YOU AGREE TO GIVE UP YOUR RIGHT TO GO TO COURT (INCLUDING IN A CLASS ACTION PROCEEDING) TO ASSERT OR DEFEND YOUR RIGHTS UNDER THESE TERMS…

34.    The Montana Residential Mobile Home Lot Rental Act states in part, "A right or obligation declared by this chapter is enforceable **by action** unless the provision declaring it specifies a different and limited effect." Montana Code Annotated § 70-33-401(2) (emphasis added.)

35.    Montana Code Annotated § 27-7-102(2) defines an action as follows, "An action is an ordinary proceeding **in a court of justice** by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Every other remedy is a special proceeding." (Emphasis added.)

36.    Meadowlark residents cannot pay through the online portal unless they waive their right to a district court proceeding and/or a class action lawsuit.

37.    Meadowlark residents are being forced to waive rights to pursue an action in District Court or risk being evicted from their homes.

38.    On November 18, 2022, Defendants purportedly sent out a letter to Meadowlark residents which stated:

In the ongoing effort to improve the water at Meadowlark, you will notice work being done at the pump house over the next week. The water tanks will be flushed out, sanitized, and cleaned to prepare for the re-set of the filtration

system. While the tanks are empty, we will ask that everyone conserve water. The community will be operating on few tanks than usual.

Please do not leave faucets dripping or running overnight as this quickly drains the water tanks. It is imperative that your home is winterized and that the heat tape on your pipes is functioning properly as well as having your home insulated, including the skirting and under the home to prevent freezing pipes.

We ask from the hours of 10 pm to 6 am you be mindful of using an excessive amount of water. This is temporary as we work on the water system.

As usual, we will have bottled water available at the office. If you would like water to be delivered to your door, please call the office at 406-252-6131.

39.    On November 20, 2022, the water to a few hundred residents was shut off entirely without notice.

40.    Defendants were not responsive to the concerns of Meadowlark residents about not having water.

41.    At 10:48 a.m. on November 21, 2022, Plaintiffs' counsel, Teague Westrope, sent an email to Defendants demanding a reason for why the water was shut off. Attorney Westrope provided a deadline of the end of the day on November 21, 2022. No response was received from Defendants.

42.    When Meadowlark residents went to Defendants' office on November 21, 2022, to seek answers for why there was no water, Defendants called law enforcement and claimed the residents were trespassing.

43.    Defendants' employees advised Meadowlark residents that a water line had broken, and that they were unable to find someone to fix it.

44.    Defendants' employees advised Meadowlark residents that they would get porta-potties for the residents. This proposal would require residents to leave their homes to go to the bathroom.

45.    A Meadowlark resident contacted Riverstone Health in hopes that involving the County Health Department would assist in resolving the issues. Said resident received a return phone call conveying that Defendants had been contacted and had stated that the problem had been fixed.

46.    After being shut off for approximately 23 hours, Defendants turned the water back on at Meadowlark for some but not all homes. The water was dark brown and appeared to be of no use other than to flush the toilet.

47.    Defendants released the following statement to the media:

> Meadowlark is on a well system that is more than 60 years old, and the well system is showing its age. Havenpark completely understands the concern of residents and has been doing all we can to repair the filtration and sediment issues.

> It's important to note that while visually not up to expectations, the water has been tested and proven to be safe. We have been completing onsite testing of the water daily ever since we purchased the park during the summer of 2020. Water samples are also sent monthly to Energy Labs to do bacterial testing, and the tests have always come back as safe and are presented to DEQ per requirement.

> We continue to follow the guidance of Curb Box Specialist, a 3rd party certified water operator in the state of Montana who is also verifying the safety of the water, and advising us on how to fix the system. During the last several months, we've upgraded and replaced several parts and filters, cleaned water lines and tanks, and even brought in the Culligan company to help with filtering. These efforts have significantly

improved the water in the community but have not fully resolved the sediment issues during higher usage times (such as weekends). We continue to do all we can and have even called in another out-of-state certified water operator in hopes that they may have new ideas or solutions that we can try.

As new potential solutions are suggested by water professionals, we will continue to invest in, and implement those suggestions as quickly and appropriately as possible.

48.    By the morning of November 22, 2022, Defendants again shut the water off to numerous Meadowlark residents without warning.

49.    On November 23, 2022, Plaintiff's filed a *First Amended Complaint and Demand for Jury Trial* in conjunction with an *Emergency Application for Preliminary Injunction and Request for Order to Show Cause*.

50.    On December 6, 2022, District Court Judge Jessica Fehr signed an *Order Granting Plaintiff's Emergency Application for Preliminary Injunction* and set a show cause hearing for December 13th, 2022, at 9:00 a.m.

51.    Judge Jessica Fehr directed Plaintiffs to have the December 6, 2022 *Order* served on Defendants by the close of business on December 7, 2022.

52.    Both Defendants were served at 11:33 a.m. on December 7, 2022.

53.    On December 8, 2022, Defendants filed a Notice of Removal in the United States District Court for the District of Montana, Billings Division.

54.    Defendants' removal of this case vacated the December 13, 2022 hearing because the District Court no longer had jurisdiction to hold the hearing.

55.    Defendants have not sought a new hearing date.

56.    Water lines within Meadowlark have continued to break, resulting in further shutoffs to the water.

## COUNT I: NEGLIGENCE

57.    Plaintiffs incorporate all preceding paragraphs as if set forth herein.

58.    Defendants own and operate a water system within Meadowlark which provides the sole source of running water to Plaintiffs' mobile homes.

59.    It was, and remains, reasonably foreseeable that unclean water from Defendant's water system would, and will continue to, cause injury and damages to Plaintiffs and their property.

60.    Defendants owed, and continue to owe, Plaintiffs a common law duty to use reasonable care under the circumstances to avoid reasonably foreseeable risks of harm to Plaintiffs and their property.

61.    Defendants have breached, and continue to breach, their duty of reasonable care.

62.    As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs have suffered, and continue to suffer, damages that include, without limitation, physical injury and illness and property damage.

/ / /

/ / /

## COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

63.     Plaintiffs incorporate all preceding paragraphs as if set forth herein.

64.     It was, and remains, reasonably foreseeable that deprivation of consistent, clean running water would/will result in Plaintiffs experiencing serious or severe emotional distress.

65.     Defendants owed, and continue to owe, Plaintiffs a common law duty to use reasonable care under the circumstances to avoid reasonably foreseeable risks of harm to Plaintiffs.

66.     Defendants have breached, and continue to breach, their duty of reasonable care by depriving Plaintiffs of consistent, clean running water.

67.     As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs have suffered, and continue to suffer, serious or severe emotional distress.

## COUNT II: VIOLATION OF THE MONTANA RESIDENTIAL MOBILE HOME LOT RENTAL ACT

68.     Plaintiffs incorporate all preceding paragraphs as if set forth herein.

69.     Montana Code Annotated § 70-33-303(1)(b) requires a landlord to "make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition . . ."

70.     Montana Code Annotated § 70-33-303(1)(d) further requires a landlord to "maintain in good and safe working order and condition all . . . plumbing . . ."

71.     Defendants have failed to correct the conditions causing the unfit water, yet they have raised rent multiple times since June 1, 2020, and plan to do so again come January 1, 2023.

72.     Defendants are in breach of their statutory obligations to Plaintiffs.

73.     Defendants' breaches have caused damages to Plaintiffs.

### COUNT III: ACTUAL FRAUD

74.     Plaintiffs Tim and Christi Reisenauer incorporate all preceding paragraphs as if set forth herein.

75.     In April 2022, Tim and Christi purchased their mobile home at 228 Jim Street in Meadowlark.

76.     Before purchasing their mobile home, Christi discovered an article online about the contaminated water at Meadowlark.

77.     Sometime in March of 2022, Tim and Christi spoke in person to Theresa Cassady, believed to be Defendants' employee, regarding the article.

78.     Theresa informed Tim and Christi that broken water lines were causing the water issues, and that Defendants were in the process of repairing the broken water lines. Theresa even went so far as to say, "I drink water from my fridge all the time," suggesting that the water was fit to drink. She also encouraged Tim and Christi to move forward with their plan to install new appliances in their mobile home.

79.    Defendants' representations, made through Theresa to Tim and Christi, were false.

80.    The false representations were material in that they assuaged Tim and Christi's concerns about the unfit water and induced them to move into Meadowlark.

81.    Defendants, through Theresa, knew that the representations were false or otherwise made the representations with reckless disregard for the truth.

82.    Defendants, through Theresa, intended Tim and Christi to rely upon the false representations so that they would move into Meadowlark.

83.    Tim and Christi did not know that Defendants' representations were false.

84.    Tim and Christi relied upon the false representations.

85.    Tim and Christi had a right to rely on the false representations.

86.    In relying upon the false representations, Tim and Christi moved into Meadowlark and have suffered actual damages.

## COUNT IV: NEGLIGENT MISREPRESENTATION
### (IN THE ALTERNATIVE TO ACTUAL FRAUD)

87.    Plaintiffs Tim and Christi Reisenauer incorporate all preceding paragraphs as if set forth herein.

88.    Defendants' representations to Tim and Christi were untrue.

89.    Defendants, through Theresa, made the representations without any reasonable ground for believing them to be true.

15

90.     Defendants, through Theresa, made the representations with the intent to induce Tim and Christi to rely on them and move into Meadowlark.

91.     Tim and Christi did not know that the representations were untrue.

92.     Tim and Christi acted in reliance upon the untrue representations.

93.     Tim and Christi had a right to rely on the untrue representations.

94.     In relying upon the untrue representations, Tim and Christi moved into Meadowlark and have suffered actual damages.

### COUNT V: TRESPASS TO CHATTELS AND CONVERSION

95.     Plaintiffs Kyle Lange and John and Joyce McDonald incorporate paragraphs 1-18 as if set forth herein.

96.     Montana Code Annotated § 70-33-311(1) states in part that a landlord may adopt a rule concerning a tenant's use and occupancy of the premises, but that such a rule is only enforceable if its purpose is to promote the convenience, safety, or welfare of the occupants in the premises, preserve the landlord's property from abusive use, or make a fair distribution of services and facilities held out for the tenants generally.

97.     What is more, Montana Code Annotated § 70-33-311(3) states that if a rule is adopted after a tenant enters into a rental agreement, and if the rule involves a substantial modification of the rental agreement, the rule is not valid until after 30 days.

98.    Defendants' rule that mobile home trailer tongues had to be covered or removed was unenforceable.

99.    Defendants' intentional interference with, and dispossession of, the trailer tongues attached to the mobile homes owned by Kyle and John and Joyce constitutes trespass to chattels and conversion.

100.    By intentionally interfering with, and dispossessing Kyle and John and Joyce of, their trailer tongues, Defendants acted with actual malice.

101.    Defendants were aware that tenants of mobile homes often lack the financial means to move.

102.    In an online article entitled *Wall Street investors pricing Americans out of last bastion of affordable housing*, published on January 18, 2021, by investigative journalists Nicolle Schorchit, Darryl Kinsey Jr., and Patrick Britt with the Howard Center for Investigative Journalism, the article revealed that Havenpark's website in 2017 discussed its business strategy as "[creating] value through aggressive optimization programs and lean property management systems," and observing that "[t]enant turnover is also minimal since it is difficult and very expensive ($6,000-8,000+) for tenants to move their homes. As a result, operating cash flow is among the highest of any real estate class."

103.   By intentionally interfering with, and dispossessing Kyle and John and Joyce of, their trailer tongues, Defendants intentionally disregarded their property rights and stole their freedom to move from Meadowlark if they wanted to.

## COUNT VI: INJUNCTIVE RELIEF

104.   Plaintiffs incorporate all preceding paragraphs as if set forth herein.

105.   Plaintiffs have undertaken numerous efforts to resolve the issues presented in this matter to no avail.

106.   Plaintiffs have reason to believe that Defendants will act in a manner that interferes with Plaintiffs' property rights in that:

a.   Defendants will pursue evictions against residents who do not waive their right to pursue an action against Defendants in District Court;

b.   Defendants will continue to shut off water to its residents at unreasonable times, without notice, and without restoring water use within a reasonable time, thereby depriving residents of the ability to use their homes;

c.   Residents will be forced to leave their homes in the winter to use porta-potties;

d.    Residents will not be able to access water for drinking, bathing, laundering clothing, or any other purpose for which water is used in a residential setting.

107.    Defendants' conduct, if continued, will cause irreparable harm to Plaintiffs in that Plaintiffs will be forced to leave their homes for basic human necessities such as going to the bathroom and bathing.

108.    Defendants' conduct, if continued, will cause irreparable harm to Plaintiffs in that Plaintiffs will be forced to choose between paying for safe drinking and cooking water or paying rent, resulting in evictions of people who cannot afford both.

109.    Defendants' conduct, if continued, will cause irreparable harm to Plaintiffs in that Plaintiffs will literally be rendered homeless if they attempt to enforce their rights under Montana law.

110.    If the water lines have broken, as Defendants claim, Defendants failure to repair the water lines in a timely manner could result in bacteria, garbage, and mineral deposits leaking into the already contaminated water, rendering the water unsafe, cause significant property damage, and cause the fear, if not the reality, of communicable diseases.

111.    Monetary damages will be an inadequate remedy for the harm caused to Plaintiffs by Defendants. In accordance with Rule 65 of the Montana Rules of

Civil Procedure, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief. Monetary damages will be impossible to ascertain, recover, and overcome.

112.   Plaintiffs are entitled to injunctive relief ordering Defendants to comply with Mont. Code Ann. 70-33-303 requiring, among other things, reasonable amounts of running water.

113.   Plaintiffs are entitled to injunctive relief prohibiting evictions during the pendency of this action as Defendants conduct is clearly retaliatory and intended to threaten Plaintiffs into not pursing their legal remedies.

114.   Plaintiffs are entitled to injunctive relief ordering Defendants to consistently provide clean water to Plaintiffs even if that means Defendants have to transport water into Meadowlark while it is investigating and remediating the problems with its well.

115.   Plaintiffs are entitled to injunctive relief ordering Defendants to provide sufficient amounts of drinking and cooking water during the pendency of this action.

116.   Plaintiffs are entitled to injunctive relief ordering Defendants to repair all broken water lines within six hours of notice of the break or to show cause as to why repairs could not be made within a reasonable time.

117.   Plaintiffs are entitled to injunctive relief ordering Defendants to provide at least 48 hours' notice when it intends to conduct non-emergency repairs.

118.   Plaintiffs are entitled to injunctive relief ordering Defendants to limit water shut offs for non-emergency repairs to four hours or less, during which times Defendants shall deliver sufficient water to its residents for drinking and cooking.

119.   Plaintiffs procured injunctive relief which ordered Defendants to provide clean running water.

120.   When Defendants were asked to comply with this *Order*, Defendants' responded that they did not believe the *Order* was valid.

## PUTATIVE CLASS

121.   Plaintiffs seek certification under Rule 23(b)(3) of the Montana Rules of Civil Procedure of the following classes:

a.   Current and former Meadowlark residents to whom Defendants have breached common law duties of reasonable care.

b.   Current and former Meadowlark residents to whom Defendants have caused serious or severe emotional distress.

c.   Current and former Meadowlark residents for whom Defendants have failed to keep the premises in a fit and habitable condition, and for whom Defendants have failed to maintain all plumbing in good and safe working order and condition, all as required under the Montana Residential Mobile Home Lot Rental Act;

    d. Current and former Meadowlark residents to whom Defendants have committed actual fraud or negligent misrepresentation by making false or untrue representations about the water condition and plans to repair the water system; and

    e. Current and former Meadowlark residents whose trailer tongues Defendants unlawfully interfered with and dispossessed the residents of.

122. Meadowlark has nearly 220 mobile home lots, thus the potential classes in this case are so numerous that joinder of all members is impracticable.

123. Questions of law and fact relative to Defendants' acts, omissions, and representations are common to the potential classes.

124. Plaintiffs' claims against Defendants are typical of the claims which other members of the potential class have against Defendants.

125. Plaintiffs will fairly and adequately protect the interests of the potential classes.

126. Common issues surrounding Defendants' acts, omissions, and representations predominate over individual circumstances, and these common issues are capable of class-wide resolution and are superior to the class members' interests in individually controlling the prosecution of their claims.

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following judgment and relief:

1.    For certification of classes of individuals similarly situated with Plaintiffs.

2.    For a determination that Defendants are both "landlords," as "landlord" is defined in the Montana Residential Mobile Home Lot Rental Act, and that Defendants have acted in concert to satisfy their responsibilities under the Act, such that Defendants are jointly liable for the harms they have caused to Plaintiffs and the potential class members.

3.    For injunctive relief:

    a.  Prohibiting Defendants from engaging in retaliatory conduct, such as increasing rent, decreasing services, or bringing or threatening to bring an action for possession.

    b.  Suspending Plaintiffs' rent obligations, and the rent obligations of potential class members, until Defendants comply with their responsibilities under the Montana Residential Mobile Home Lot Rental Act and prohibiting evictions during this time.

    c.  Ordering Defendants to comply with Mont. Code Ann. 70-33-406 requiring, among other things, reasonable amounts of running water.

d. Ordering Defendants to consistently provide clean water to Plaintiffs even if that means Defendant has to transport water into Meadowlark's water tanks while it is investigating and remediating the problems with its well.

e. Ordering Defendants to provide sufficient amounts of drinking and cooking water during the pendency of this action.

f. Ordering Defendants to repair all broken water lines within six hours of notice of the break or to show cause as to why repairs could not be made within a reasonable time.

g. Ordering Defendants to provide at least forty-eight hours' notice when it intends to conduct non-emergency repairs.

h. Ordering Defendants to limit water shut offs for non-emergency repairs to four hours or less, during which times Defendants shall deliver sufficient water to its residents for drinking and cooking.

4.    For actual damages caused to Plaintiffs and potential class members for Defendants' breaches of their common law duties, and for their violations of the Montana Residential Mobile Home Lot Rental Act, including, without limitation: for the costs of supplemental water and laundry services; for the replacement costs of damaged clothing; for the costs to repair or replace damaged bathtubs, toilets, appliances, and hot water heaters; for the costs to repair or replace damaged

plumbing; for the costs to repair or replace damaged mobile homes; and for emotional distress.

5.   For reasonable charges for labor caused to Plaintiffs and potential class members for Defendants' violations of the Montana Residential Mobile Home Lot Rental Act, including, without limitation: labor to secure supplemental water, perform laundry services at laundromats, shop for replacement clothing, and repair damaged appliances, toilets, hot water heaters, and plumbing.

6.   For actual damages to Tim and Christi and potential class members for Defendants committing actual fraud or negligent misrepresentation.

7.   For punitive damages for Defendants committing actual fraud and being guilty of actual malice toward Plaintiffs and potential class members.

8.   For three months' rent to Kyle, John and Joyce, and potential class members for Defendants implementing an unenforceable rule.

9.   For actual damages to Kyle, John and Joyce and potential class members for Defendants committing the torts of trespass to chattels and conversion.

10.   For reasonable attorneys' fees and costs as permitted under the Montana Residential Mobile Home Lot Rental Act.

11.   For all further legal or equitable relief as the Court deems just.

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this matter.

DATED December 20, 2022.

AVA LAW GROUP

*/s/ Teague Westrope*
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2022, I served a true and correct copy

of the foregoing by electronic filing service to the following persons:

William W. Mercer
Brianne C. McClafferty
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, MT 59103
wwmercer@hollandhart.com
bcmcclafferty@hollandhart.com

Brett J. Young, *Pro Hac Vice Admission Pending*
Justin VandenBout, *Pro Hac Vice Admission Pending*
Norton Rose Fullbright US LLP
1301 McKinney, Suite 5100
Houston, TX 77010
brett.young@nortonrosefulbright.com
justin.vandenbout@nortonrosefulbright.com

AVA LAW GROUP

*/s/ Teague Westrope*
Attorney for Plaintiff
