IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GARY & CHERIE DEVERAUX, STEVE & JUDY WOODARD, CHRISTINE BLAYLOCK, KYLE LANGE, JOHN & JOYCE MCDONALD, and TIM & CHRISTI REISENAUER, individually and on behalf of others similarly situated, | CV 22-136-BLG-SPW |
| Plaintiffs, | ORDER |
| vs. | |
| MEADOWLARK OF BILLINGS LLC, and HAVENPARK MANAGEMENT LLC, | |
| Defendants. | |

Before the Court is Defendants Meadowlark of Billings LLC and

Havenpark Management LLC's Motion to Dismiss. (Doc. 22). Defendants move

for dismissal of Plaintiffs Gary and Cherie Deveraux, *et al.*'s fraud and negligent

misrepresentation claims because they lack the requisite specificity and sufficient

factual allegations to state a plausible claim for relief. (Doc. 23 at 2).[1] For the

following reasons, the Court grants Defendants' motion without leave to amend.

---

[1] Plaintiffs label their second and third counts in their Second Amended Complaint (Doc. 15) both as Count II. (*See* Doc. 15 at 13). As such, though Plaintiffs' claims for fraud and negligent misrepresentation are labeled Counts III and IV, they are actually Counts IV and V. To avoid confusion, the Court will refer to the claims by their name, rather than the count number.

## I.     Background

Defendants own and manage Meadowlark, a mobile home park in

Yellowstone County, Montana. (Doc. 25 at 3). Plaintiffs are park residents and

own their homes. (*Id*. at 2-3). Defendants provide water to Plaintiffs' homes.

In November 2020, Plaintiffs noticed negative changes in their water, and by

mid-to-late 2021, their water had turned nearly black. (Doc. 15 at 4). Residents

notified Defendants of the problem. (*Id*.). On February 2, 2022, the Billings

Gazette reported that Defendants had been working with Montana Department of

Environmental Quality (DEQ) since December 2021 to address the water

condition. (*Id*.; Doc. 30-1 at 2).[2] DEQ reported it had discovered iron and

manganese in the water, neither of which DEQ regulates and which DEQ described

as causing "general unpalatability." (Doc. 30-1 at 3). DEQ found that the water

was "clean" and showed no traces of coliform, or E. coli. (*Id*.). Defendants also

told the Billings Gazette that they had ordered parts to repair the system and were

waiting for them to arrive. (*Id*. at 4).

---

[2] Generally, the Court cannot consider evidence outside the pleadings on a motion to dismiss. *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011). However, documents may be incorporated by reference into the pleadings when (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Id*. at 999. Here, Plaintiffs reference the Billings Gazette article explicitly in the General Allegations section of their complaint, and, based on the timeline of events outlined in the complaint, implicitly in describing the conversation at issue in the fraud and negligent misrepresentation claims. (*See* Doc. 15 at 4, 14-15). Given the article's focus on the water issues at Meadowlark, the safety of the water, and Defendants' efforts to fix the water issues, the article is central to Plaintiffs' claims. Finally, neither party questions its authenticity. As such, the Court incorporates it by reference in assessing Plaintiffs' complaint.

Sometime in March 2022, Plaintiffs Tim and Christi Reisenauer spoke with Theresa Cassady, one of Defendants' employees, about an article online detailing the water issues at Meadowlark.[3] (Doc. 15 at 14). The Reisenauers had not yet purchased their mobile home in Meadowlark. Cassady told the Reisenauers that broken water lines were causing the water issues, and that Defendants were repairing the lines. (*Id.*). Cassady also remarked, "I drink water from my fridge all the time." (*Id.*). Plaintiffs characterize this statement as "suggesting that the water was fit to drink." (*Id.*). Cassady further encouraged the couple to move forward with their plan to install new appliances in their mobile home. (*Id.*). The Reisenauers purchased their mobile home in Meadowlark after their conversation with Cassady in April 2022. (*Id.*).

Also in April 2022, Defendants issued a public statement that they had begun to repair the water system. (*Id.* at 5). Meanwhile, Plaintiffs were experiencing a variety of health issues—including skin irritation, bacterial infections, and a positive E. coli test—that they ascribe to the water. (*Id.*). Plaintiffs also allege suffering severe emotional distress from having to adapt to the water issues. (*Id.* at 5-6).

---

[3] Though Plaintiffs' complaint does not specify which article Christi read, based on the timeline of events and the articles mentioned earlier in the complaint, the Court infers that it was the Billings Gazette article.

Plaintiffs filed their original complaint in the 13th Judicial District Court in Yellowstone County on November 1, 2022. (Doc. 1-3). At that time, the water issues had not been fixed and Defendants were providing bottled water to residents who requested it. (Doc. 15 at 5, 8-9). Defendants removed the case to this Court on December 7, 2022. (Doc. 1).

## II. Legal Standard

Under Rule 8(a)(2), the Court "assume[s] the veracity of a complaint's factual allegations and then determine[s] whether they plausibly give rise to an entitlement to relief." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1179 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Claims of fraud and grounded in fraud are subject to the heightened pleading standards of Rule 9(b) and must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Vess*, 317 F.3d at 1103-04. This district considers negligent misrepresentation a claim grounded in fraud. *H&R Block Tax Servs. LLC v. Kutzman*, CV 10-03-M-DWM, 2010 WL 11531369 (D. Mont. Apr. 21, 2010) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)). Particularity requires the plaintiff allege "the who, what,

4

when, where, and how of the misconduct charged." *United Healthcare*, 848 F.3d at 1180 (internal citations and quotations omitted). Additionally, allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute fraud charged so they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

At the same time, Rule 9(b)'s requirement of specificity and detailed allegations "should not be construed in an unduly strict fashion." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1291 (4th ed.); *see also United Healthcare*, 848 F.3d 1180 (quoting Wright & Miller, *supra*, § 1298) ("this standard 'does not require absolute particularity or a recital of the evidence'"). Rather, whether the defendant has adequate notice of the particular misconduct is a fact-specific inquiry that takes into account the characteristics of the parties and circumstances of the representations. *See* Wright & Miller, *supra*, § 1296 (explaining that the particularity requirement is more stringent for allegations against businesses with large numbers of transactions); *United Healthcare*, 848 F.3d at 1181-83 (explaining the particularity requirements for a claim against large national insurance companies and targeting tens of thousands of alleged representations).

A party can challenge a pleading's legal sufficiency under Rules 8 and 9 by moving to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When ruling on a Rule 12(b)(6) motion, the Court must accept well-pled factual allegations in the pleading as true and construe them in the light most favorable to the non-moving party. *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012).

## III.   Analysis

Plaintiffs' fraud and negligent misrepresentation claims stem from the March 2022 conversation between Cassady and the Reisenauers.  Defendants contend that neither Plaintiffs' description of the conversation nor their support for the falsity of Cassady's statements are particularized enough to survive a motion to dismiss.

### A.   *Fraud*

Under Montana law, a plaintiff claiming fraud must show:

> (1) [the defendant made] a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation.

*Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1182 (Mont. 2014).

*1. Representations*

Here, the primary dispute between the parties is over whether Plaintiffs'
complaint described the conversation between the Reisenauers and Cassady with
sufficient particularity to satisfy Rule 9(b).  Defendants allege Plaintiffs'
description of the conversation is "a vague summary" because it did not specify
what "water issues" they discussed or the article Christi read that prompted her
concerns about the park.  (Doc. 23 at 6-7).  Plaintiffs respond that Defendants
overstate the specificity that Rule 9(b) requires.  (Doc. 24 at 5-7).

The Court agrees that Defendants hold Plaintiffs' description of Cassady's
representations to a higher standard of particularity than is required by Rule 9(b),
and that Plaintiffs' pleading put Defendants on notice of the representations at
issue in their fraud claim.  Plaintiffs identify the mobile home park owned and
managed by Defendants where the conversation occurred, between whom the
conversation occurred, and the month and year that the conversation occurred.
(Doc. 15 at 2-3, 14-15).  Though Plaintiffs do not plead the exact date of the
conversation, their identification of the month and year within the case's
timeline—specifically relative to the February 2022 Billings Gazette article and
when Defendants began repairing the water system in April 2022—is sufficiently
particular for notice.

Finally, though Plaintiffs do not fully quote the conversation, they sufficiently explain its contents to put Defendants on notice of what topics were covered and what Cassady said with respect to those topics.  Defendants assert Plaintiffs were required to quote the entire conversation based on *Sanford v. MemberWorks, Inc.* 625 F.3d 550 (9th Cir. 2010).  To the contrary, *Sanford* held that where a personal conversation was the basis for the claim, plaintiffs need to allege specifically who was involved in the conversation to satisfy Rule 9(b).  *Id.* at 558.  Plaintiffs clearly did that here.

Further, Defendants' contention that Plaintiffs' description of the water issues is too vague to put them on notice of what issues Plaintiffs are talking about is baseless and comes across as a bad faith attempt to get Plaintiffs' claims dismissed.  Plaintiffs specified the mobile home park at issue, which is presumably the only mobile home park Meadowlark Defendants own in Yellowstone County, and outlined in detail the problems with the water, namely its color and chemical contents.  (*See* Doc. 15 at 4-5).  These problems were so severe that they attracted media attention, prompted DEQ to intervene, and required Defendants to distribute bottled water to residents.  (*Id.*).

Accordingly, Plaintiffs' pleading sufficiently describes Cassady's representations to put Defendants on notice.

2.  *Falsity of the Representations and Cassady's Knowledge of Their Falsity or Ignorance of Their Truth*

Plaintiffs next must plead that Cassady's statements were false, and that she knew of their falsity or was ignorant of their truth.  Under Rule 9(b), an allegation of falsity requires Plaintiffs to plead "what is false or misleading about a statement, and why it is false." *United Healthcare*, 848 F.3d at 1180.  The representation also "must ordinarily be an affirmation of past or existing facts to be an actionable fraud claim; predictions as to future events are deemed opinions, and not actionable by fraud." *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).

Defendants argue that Plaintiffs do not explain what is false or misleading about Cassady's misrepresentations and why. (Doc. 23 at 8).  Rather, Plaintiffs only assert impermissible legal conclusions. (*Id.*).  Plaintiffs retort that their complaint, taken as a whole, paints a picture of intentional misrepresentations, or representations made with a reckless disregard of the truth, because broken water lines were not the cause of the water issues and Defendants were not replacing the lines. (Doc. 24 at 7).

Even considering the complaint as a whole, Plaintiffs do not state with particularity why Cassady's comments, at the time she made them, were false and that she either knew they were false or was ignorant of their truth.  Instead, Plaintiffs merely label her statements as false and her understanding of them as

9

false. Plaintiffs do not plead that, when Cassady talked with the Reisenauers, broken water lines were not the cause or believed to be the cause of the water issues. Even if the water lines were not the cause or believed to be the cause, Plaintiffs do not plead that Cassady knew or was ignorant of that fact. The same can be said for whether Defendants were in the process of repairing the water system. Lastly, Plaintiffs do not plead that Cassady lied about drinking water from her fridge.

Plaintiffs seem to understand that they not only fail to state why Cassady's claims were false and why she knew of their falsity, but also that they cannot do so without discovery. In their response brief, Plaintiffs state that they cannot "know without the benefit of discovery what exactly Defendants knew about the issues with Meadowlark's water system at the time the Reisenauers bought their home, and what steps, if any Defendants were undertaking" to fix the water system and return clean running water to residents. (Doc. 24 at 8).

Instead, Plaintiffs hang their hat on the idea that Cassady's representations about the cause of the water issues and whether Defendants were fixing them were, in hindsight, not true. However, Plaintiffs cannot rely on the benefit of hindsight in asserting the falsity of her representations. *See Glen Holly Ent., Inc*, 100 F. Supp. 2d at 1093. The only contemporaneous facts stated in the complaint that existed when Cassady spoke with the Reisenauers come from the Billings Gazette

10

article, which said the water was clean and Defendants had ordered parts to repair

the water system.  As such, Plaintiffs' complaint provides no basis for the Court to

conclude Cassady's statements were false and that she knew they were false.

Thus, Plaintiffs fail to state a claim for actual fraud.

      B.    *Negligent Misrepresentation*

A party asserting a claim for negligent misrepresentation must demonstrate:

> (1) the defendant made a representation as to a past or existing material fact;
> (2) the representation must have been untrue; (3) regardless of its actual
> belief, the defendant must have made the representation without any
> reasonable ground for believing it to be true; (4) the representation must
> have been made with the intent to induce the plaintiff to rely on it; (5) the
> plaintiff must have been unaware of the falsity of the representation; it must
> have acted in reliance upon the truth of the representation and it must have
> been justified in relying upon the representation;  (6) the plaintiff, as a result
> of its reliance, must sustain damage.

*Morrow v. Bank of Am., N.A.*, 324 P.3d at 1180.

The parties' arguments on negligent misrepresentation largely mimic their

remarks on Plaintiffs' fraud claim: Defendants claim Plaintiffs do not allege the

representations and the representations' falsity with particularity, while Plaintiffs

argue that their pleading meets the standards of Rule 9(b).

The Court agrees with Defendants that Plaintiffs' claim for negligent

misrepresentation fails for the same reason as their fraud claim: They, somewhat

self-admittedly, do not plead with sufficient particularity that Cassady's

representations were untrue and that she made them, for this claim, without any

reasonable ground for believing they were true.  Again, Plaintiffs essentially ask the Court to infer that because Defendants had not resolved the water issues by the time Plaintiffs filed the case in November 2022, Cassady must have made untrue statements to the Reisenauers without any reasonable ground for believing them to be true.  Particularly given the Billings Gazette article published about a month prior to the conversation and the lack of any contrary facts in Plaintiffs' pleading, the Court cannot make such an inference.  Accordingly, the complaint fails to state a claim for negligent misrepresentation.

C.    *Leave to Amend*

Leave to amend should be granted unless the pleading "could not possibly be cured" by the allegation of other facts. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  The Court dismisses Plaintiffs' fraud and negligent misrepresentation claims without leave to amend because Plaintiffs admit in their response brief that they need discovery to know "what exactly Defendants knew about the issues with Meadowlark's water system at the time the Reisenauers bought their home, and what steps, if any Defendants were undertaking" to fix the water system and return clean running water to residents.  (Doc. 24 at 8).  Such facts are the heart of sufficient fraud and negligent misrepresentation claims under Rule 9(b), so amendment of Plaintiffs' complaint without discovery would be futile in curing its defects.

## IV.    Conclusion

For these reasons, the Court finds Plaintiffs do not sufficiently state a claim for actual fraud and negligent misrepresentation.  Furthermore, the Plaintiffs' response to Defendants' Motion to Dismiss demonstrates that amendment would be futile.

IT IS SO ORDERED that Defendants' Motion to Dismiss (Doc. 22) is GRANTED.  IT IS FURTHER ORDERED that Plaintiffs' claims for fraud and negligent misrepresentation—labeled in the Second Amended Complaint as Counts III and IV—are DISMISSED, and Defendants' first Motion to Dismiss (Doc. 6) is DENIED as moot.

DATED the 2nd day of March, 2023.

SUSAN P. WATTERS
U.S.  DISTRICT JUDGE